UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREAT LAKES, L.L.C.,                      Case No. 2:21-cv-234

        Plaintiff,                         Hon. Paul L. Maloney
                                            U.S. District Judge

v.

HARLEYSVILLE PREFERRED
INSURANCE COMPANY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Harleysville's motion for summary judgment. (ECF No. 43.)

Plaintiff Great Lakes, L.L.C. ("Great Lakes") filed suit against Defendant Harleysville Preferred Insurance Company ("Harleysville") on November 15, 2021. Great Lakes alleges breach of contract and breach of the duty of good faith and fair dealing. Great Lakes specifically asserts that Harleysville failed to pay for employee theft losses that occurred during three of its four policy terms with Harleysville. Harleysville now moves for summary judgment.

Harleysville contends that the Court should dismiss Plaintiff's breach of contract claim for two reasons. First, Harleysville contends that the insurance policy entered into by Great Lakes contained discovery provisions specifying that the only policy under which Great Lakes could recover for employee theft loss was the policy

in effect when Great Lakes discovered the loss. (ECF No. 43, PageID.313-314.) Great Lakes discovered the loss during its fourth policy term. Second, Harleysville contends that the insurance policies contained non-cumulation provisions, meaning that the $50,000 coverage limit for employee theft loss did accumulate from year to year. (*Id.*, PageID.311-313.) And Harleysville paid Great Lakes the $50,000 to which it was entitled. As for Great Lakes's claim that Harleysville breached its duty of good faith and fair dealing, Harleysville avers that no such claim has been recognized by Michigan law in the insurance context. (*Id.*, PageID.314-315.)

Great Lakes hardly addresses any of Harleysville's arguments in its response. Instead, it claims that the insurance policies it entered into were "dense" and "voluminous." (ECF No. 46-1, PageID.1206.) Great Lakes contends that many of the provisions within the policies are contradictory, and that the provisions are therefore ambiguous. (*Id.*, PageID.1202-1203.) Because the contract terms are ambiguous, Great Lakes argues that they should be construed "in order to give effect to the insured's reasonable expectations." (*Id.*, PageID.1202). According to Great Lakes, it reasonably expected Harleysville to pay it $50,000 per policy term for employee theft loss (1) because Great Lakes paid insurance premiums over the course of the four policy terms, (2) because its employees' embezzlement scheme occurred over the course of four policy terms, and (3) because its loss related to the embezzlement scheme exceeded $200,000.

The undersigned respectfully recommends that the Court grant Harleysville's motion for summary judgment. Under its plain and ordinary meaning, the language

2

of the insurance policy provided that the only employee theft loss discovered during the policy term was covered under the policy, and that the most that Great Lakes could recover for employee theft loss in one policy term was $50,000. There is no dispute that Great Lakes discovered the relevant employee theft loss in late 2017, or that Harleysville paid Great Lakes $50,000 under the employee theft loss provisions of the 2017 policy. As such, Harleysville has established that there are no genuine issues of material fact and that it did not breach the insurance policies nor its duty of good faith and fair dealing.

## II.  Background

Plaintiff Great Lakes owns a historic hotel and restaurant in Sault Ste. Marie, Michigan. On February 2, 2014, Great Lakes obtained an insurance policy from Harleysville. (ECF No. 43-1.) That policy covered Great Lakes until February 2, 2015. Great Lakes ultimately renewed the policy three times, with their final policy term with Harleysville beginning February 2, 2017, and ending February 2, 2018. (ECF Nos. 43-2 (2015 Policy), 43-3 (2016 Policy), 43-4 (2017 Policy).)

Great Lakes says that it discovered that several of its employees had been embezzling money from it in November of 2017. (ECF No. 46-1, PageID.1286.) The loss associated with the embezzlement totaled approximately $700,000. (*Id.*) The insurance policies that Great Lakes obtained through Harleysville included employee theft loss provisions stating that Harleysville would pay up to $50,000 for losses incurred by employee theft. (ECF No. 43-1, PageID.456; ECF No. 43-2, PageID.634; ECF No. 43-3, PageID.794; ECF No. 43-4, PageID.953.) Great Lakes reported the

embezzlement and associated loss to Harleysville in December of 2017. (*See* ECF No. 43-6, PageID.1010-1012.)

After Great Lakes reported the loss to Harleysville, the insurance company employed Meaden & Moore, an accounting firm, to verify that the loss exceeded $50,000. (ECF No. 43-7.) On January 5, 2018, Meaden & Moore provided Harleysville with a report confirming as much. (*Id.*, PageID.1017-1019.) Five days later, on January 10, 2018, Harleysville issued Great Lakes a check for $50,000. (ECF No. 43-8, PageID.1025.)

Great Lakes filed suit in the 50th Circuit Court in Chippewa County on October 12, 2021. (ECF No. 1-1, PageID.15.) On November 15, 2021, Harleysville filed its notice of removal to this Court in accordance with 28 U.S. Code § 1441(b). (ECF No. 1, PageID.4.) Harleysville then moved for a more definite statement on December 8, 2021 (ECF No. 8), which this Court granted on January 3, 2022, ordering Great Lakes to file an amended complaint (ECF No. 9, PageID.142). Great Lakes filed its amended complaint on January 14, 2022. (ECF No. 10.)

In its amended complaint, Great Lakes avers that its employees embezzled money over the course of four years: from 2014 to 2017. (ECF No. 10, PageID.145.) But Great Lakes claims that Harleysville "pa[id] $50,000 for the dishonest acts that occurred during the insurable year of 2017 only, and ignored losses that had occurred in the insurable years of 2014, 2015, and 2016." (*Id.*, PageID.146.) Great Lakes asserts that Harleysville, by declining to pay for losses accumulated during the first

4

three policy periods, committed a breach of contract and of its duty of good faith and fair dealing. (*Id.*, PageID.147-148.)

### III. Relevant Provisions of the Insurance Policies

The parties have submitted copies of the insurance policies as exhibits to their briefs. In their briefs, the parties point specifically to the following Summary of Coverages within the insurance policies:

**COMMERCIAL PROPERTY PLUS II ENDORSEMENT**
**Summary of Coverages**

No coverage is provided by the summary of coverages below, nor can it be construed to replace any provisions of your policy or any endorsement attached thereto. You should read your policy, its endorsements, and any changes to your policy under this endorsement for complete information on coverages you are provided. If there is any conflict between the summary of coverages and your policy or the endorsements thereto, your policy and the endorsements will control.

| | | |
|---|---|---|
| Premises Boundary | | 1000 feet |
| Signs | | Included as Covered Property |
| Debris Removal | | $50,000 |
| Preservation of Property | | 60 days |
| Fire Department Service Charge | | $25,000 |
| Pollutant Clean up and Removal | | $25,000 |
| Building Ordinance or Law | | |
| | Coverage A | Included within Limit of Insurance |
| | Coverage B | $50,000 |
| | Coverage C | $50,000 |
| Electronic Data | | $25,000 |
| Accounts Receivable | On-Premises | $50,000 |
| | Off-Premises | $50,000 |
| Arson or Theft Reward | | $25,000 |
| Back- up of Sewers or Drains | | $25,000   subject to $100,000 policy aggregate |
| Brands and Labels | | $25,000 |
| Consequential Loss to Stock | | $50,000 |
| Employee Theft and Forgery or Alteration | | $50,000 |
| Employees Tools | | $10,000 |
| Electronic Data Processing Equipment | | $25,000 |
| Fine Arts | | $25,000 |
| Fire Extinguisher Recharge Expense | | $10,000 |
| Lock and Key Replacement | | $1,500   $50 Special Deductible |
| Loss Adjustment Expenses | | $10,000 |
| Money and Securities | | $25,000   Inside/Outside |
| Off-Premises Utility Service Failure | | $25,000 |
| Theft Damage to Building | | Included |
| Newly Acquired or Constructed | Property | 90 days |
| | Building | The lesser of 25% of Building Limit or $1,000,000 |

5

| Business Personal Property | The lesser of 25% of BPP Limit or $500,000 |
|---|---|
| Personal Effects and Property of Others | $25,000 |
| Valuable Papers and Records (other than Electronic Data) | $50,000 |
| Property Off- Premises including Fairs, Trade Shows or Exhibitions | $50,000 |
| Salesperson's Samples | $15,000 |
| Laptops and other portable office equipment, territory worldwide | $10,000 |
| Outdoor Property | $25,000, no more than $1,000 for each tree, plant, or shrub |
| Spoilage due to Mechanical Breakdown | $25,000 |
| Patterns, Dies, Molds and Forms (Theft) | $50,000 |
| Property in Transit | $50,000 |

(ECF No. 43-1, PageID.450 (2014 Policy); ECF No. 43-2, PageID.628 (2015 Policy); ECF No. 43-3, PageID.788 (2016 Policy); ECF No. 43-4, PageID.947 (2017 Policy).)

The parties also point to the following employee theft loss provisions within the insurance policies:

> **III. The following are ADDED to Section A. Coverage, subsection 4. Additional Coverages of the Building and Personal Property Coverage Form:**
>
>> **4.l. Employee Theft and Forgery or Alteration**
>>
>>> **A. Insuring Agreements**
>>>
>>>> Under item **4.l. Additional Coverages, Employee Theft and Forgery**, coverage is provided for the following Insuring Agreements;
>>>>
>>>>> **1. Employee Theft**
>>>>>
>>>>>> We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.
>>>>>>
>>>>>> This coverage does not apply to any "employee" immediately upon discovery by you or any of your partners, officers, or directors not in collusion with the "employee"; of any theft or dishonest act committed by that "employee" before or after being employed by you.
>
> . . . .
>
>> **B. Limit of Insurance:** The most we will pay for loss or damage, including reasonable legal expense payments as

6

provided under this Additional Coverage, in any one "occurrence" is $50,000. All loss or damage caused by one or more "employees," or involving a single act or series of related acts, is considered one occurrence.

**C. Exclusions**

. . . .

1. This Additional Coverage does not apply to:

    **a. Acts Committed By You, Your Partners or Your Members**

    Loss resulting from "theft" or any other dishonest act committed by:

    **(1)** You; or

    **(2)** Any of your partners or "members";

    Whether acting alone or in collusion with other persons.

    **b. Indirect Loss**

    Loss that is an indirect result of any act or "occurrence" covered by this Additional Coverage including, but not limited to, loss resulting from:

    **(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

    **(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this Additional Coverage.

    **(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Additional Coverage. Item 4.r of this enhancement endorsement is not applicable to this section.

. . . .

**4. Discovery**

  (1) We will pay for loss that you sustain through acts committed at any time and discovered by you during the policy period shown in the Declarations; or

>> (2) Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Additional Coverage has been or will be incurred, even though the exact amount or details of loss may not then be known. Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this Additional Coverage.
>
> . . . .
>
> **VIII. Additional Conditions**
>
> The following Additional Conditions are added to all coverages provided under this Coverage Enhancement:
>
> **a.** Coverage afforded the insured under this Coverage Enhancement will be excess over any other valid and collectible insurance available to the insured.
>
> **b. Non-Cumulation Of Limit Of Insurance**
>
> Regardless of the number of years this Enhancement Endorsement remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

(ECF No. 43-1, PageID.455-457, 463; ECF No. 43-2, PageID.633-635, 641; ECF No. 43-3, PageID.793-795, 801; ECF No. 43-4, PageID.952-954, 960.)

### IV. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

V. **Analysis**

As set forth above, Harleysville asserts that Great Lakes breached the insurance policy as well as its duty of good faith and fair dealing.

a. **Breach of Contract**

This is a diversity case, and Michigan contract law controls. In Michigan, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). Contract interpretation is a question of law. When construing a contract, the Court's primary task is to give effect to the parties' intention at the time they entered the contract. *Id.* at 102. Courts accomplish this by examining the contract language according to its plain and ordinary meaning. *Id.* If the language is unambiguous, its meaning is a question of law. *Port Huron Educ. Assn. v. Port Huron Area Sch. Dist.,* 550 N.W.2d 228, 237 (1996). But if the language is "unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Id.*

As set forth above, Great Lakes responds to Harleysville's motion to dismiss by averring that the insurance policies it entered into contained ambiguous and indeed contradictory terms relating to employee theft loss. (ECF No. 46-1, PageID.1202-1203.) According to Great Lakes, these ambiguous terms create an issue of fact precluding summary judgment. Additionally, Great Lakes contends that there is an issue of fact as to "when the loss occurred." (*Id.*, PageID.46-1, PageID.1204-1205.) The undersigned respectfully disagrees.

Although the employee theft loss provisions of the insurance policies at issue may not be perfectly written, they are nevertheless unambiguous. From the outset, the summary of coverage sets forth a $50,000 limit for employee theft and forgery or alteration.

| Employee Theft and Forgery or Alteration | $50,000 |
|---|---|

(ECF No. 43-4, PageID.947.)[1]

Subsection III.4.l then lays out the specific circumstances under which Great Lakes is entitled to coverage for employee theft loss. (*Id.*, PageID.952-954.) Subsection III.4.l.A.1 provides that Great Lakes is entitled to coverage for losses related to employee theft, except to the extent that the theft occurred prior to or after the employee's term of employment with Great Lakes. (*Id.*, PageID.952.) Contrary to Great Lakes's assertion, this provision is neither vague nor contradictory.[2] It simply

---

[1] For the purposes of the analysis, the undersigned cites only to the 2017 policy. But, as indicated above, the relevant provisions are contained in each of the four policies.

[2] Nor are the provisions that Great Lakes cites from subsections of the insurance policy that have no bearing on the employee theft loss coverage, such as the

conveys that if an individual steals from Great Lakes, and later becomes employed by Great Lakes, the theft occurring prior to the individual's term of employment does not fall within Great Lakes's employee theft loss coverage under the policy. Similarly, if a former Great Lakes employee steals from Great Lakes after their term of employment has ended, that theft does not fall within Great Lakes's employee theft loss coverage under the policy.

Subsection III.4.l.C speaks to circumstances under which employee theft is not covered under the policy. (*Id.*, PageID.953.) The subsection plainly provides that theft by Great Lakes, its managers, or its members[3] is not covered under the policy, nor is indirect loss such as the expenses associated with establishing direct loss. (*Id.*) But more significantly, this subsection contains a discovery provision. As set forth above, that discovery provision provides that:

> (1)   We will pay for loss that you sustain through acts *committed at any time and discovered by you during the policy period shown in the Declarations*; or
>
> (2)   Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Additional Coverage has been or will be incurred, even though the exact amount or details of loss may not then be known. Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this Additional Coverage.

(*Id.* (emphasis added).)

---

subsections pertaining to money and securities coverage. (ECF No. 46-1, PageID.1199-1200.)

[3]   Under the policies, "'member' means an owner of a limited liability company represented by its membership interest, who also may serve as a 'manager.'" (ECF No. 43-4, PageID.960.)

The parties agree that Great Lakes discovered and reported the relevant employee theft loss in late 2017. Under the plain and ordinary meaning of this provision, an employee theft loss discovered in 2017 is **not covered** by the 2014 policy. Under the plan and ordinary meaning of this provision, an employee theft loss discovered in 2017 is **not covered** by the 2015 policy. Under the plain and ordinary meaning of this provision, an employee theft loss discovered in 2017 is **not covered** by the 2016 policy. Per the plain and ordinary meaning of the discovery provision, the only policy under which Great Lakes had coverage for an employee theft loss discovered in 2017 was the 2017 insurance policy. And there is no dispute that Great Lakes paid the full $50,000 coverage for the employee theft loss that was discovered during the 2017 policy term.

In its attempt to establish a genuine issue of material fact, Great Lakes argues that the parties disagree as to "when the loss occurred." (ECF No. 46-1, PageID.1204.) But as pointed out by Harleysville in its reply, and as made clear by the discovery provision in the insurance policies, Great Lakes's coverage for employee theft loss depended not on when the loss occurred, but on when the loss was discovered by Great Lakes. To reiterate, the parties agree that the loss was discovered by Great Lakes in late 2017, during the fourth and final policy term.

In the opinion of the undersigned, the Court's breach of contract analysis could stop there. But as indicated by Harleysville, Great Lakes's insurance policies contained an additional term precluding the kind of recovery that Great Lakes seeks.

12

Specifically, Subsection VII.b on the additional conditions for the coverage enhancement including the employee theft loss provision provided that:

> Regardless of the number of years this Enhancement Endorsement remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

(ECF No. 43-4, PageID.960.) The meaning of this provision is especially clear, and especially contrary to Great Lakes's arguments in this case: regardless of the number of policy terms that Great Lakes acquired, the employee theft loss coverage remained the same.[4] That limit was $50,000.

Ultimately, the undersigned is sympathetic to the losses experienced by Great Lakes at the hands of its employees. But under the plain and ordinary meaning of the language contained in its insurance policies, Great Lakes's 2017 discovery of its employees' embezzlement scheme in excess of $50,000 entitled it to recover $50,000 in insurance proceeds from Harleysville. There is no dispute that Great Lakes recovered that $50,000.

---

[4]  In *Dilley, Dewey & Damon, P.C. v. St. Paul Fire & Marine Insurance Co.*, the Sixth Circuit noted that the following language in an insurance contract appeared to unambiguously limit coverage to $25,000:

> Limit of your coverage [$25,000]. This is the most we'll pay for all loss caused by any one employee, even if others are involved. If your loss is caused by two or more employees acting together, this limit applies separately to each employee. Any payment we make won't reduce your coverage for loss caused by other employees.
>
> This limit of coverage applies regardless of how many people are insured under this agreement. This amount can't be accumulated from year to year, no matter how long this agreement is in effect or how many premiums you pay.

No. 89-1082, 1989 WL 125657, at *1-2 (6th Cir. Oct. 24, 1989).

### b. Breach of Duty of Good Faith and Fair Dealing

In conjunction with its breach of contract claim, Great Lakes asserted a breach of the duty of good faith and fair dealing claim. Harleysville avers that Michigan law does not recognize an independent claim for the breach of duty of good faith and fair dealing. (ECF No. 43, PageID.314.) True, there is no independent tort action for a breach of duty of good faith and fair dealing. *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 56 (Mich. 1980) (We decline . . . to declare the mere bad-faith breach of an insurance indemnity contract an independent and separately actionable tort.")) But a party may assert a breach of duty of good faith and fair dealing claim in conjunction with a breach of contract claim. *Stryker Corp. v. XL Ins. Am., Inc.*, No. 1:17-CV-66, 2021 WL 3829704, at *4 (W.D. Mich. July 26, 2021). That is what Great Lakes did here. That being said, the undersigned recommends that the Court grant Harleysville summary judgment as to Great Lakes's breach of duty of good faith and fair dealing claim because the undersigned finds that there are no genuine issues of material fact and Harleysville is entitled to summary judgment on Great Lakes's breach of contract claim.

### VI. Recommendation

The undersigned respectfully recommends that the Court grant Harleysville's motion for summary judgment. (ECF No. 43.) It is the undersigned's opinion that Harleysville has met its summary judgment burden; there are no genuine issues of material fact and Harleysville adhered to the plain and ordinary meaning of the language within the insurance policies.

Dated: June 29, 2023            /s/ *Maarten Vermaat*
                                                                           MAARTEN VERMAAT
                                                                           U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).